FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG 22  PM 4:35

LORETTA G. WHYTE
         CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEXANDER A. OYENUGA | CIVIL ACTION |
| VERSUS | NO. 05-1410 |
| JOHN ASHCROFT, U.S. ATTORNEY GENERAL, ET AL | SECTION "F" (2) |

### REPORT AND RECOMMENDATION

This is a petition for federal habeas corpus relief filed pursuant to 28 U.S.C. § 2241 by a foreign national being held in the custody of the Department of Homeland Security ("DHS") pursuant to a final order of deportation. This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations. 28 U.S.C. § 636(b)(1)(B) and (C). I find that no evidentiary hearing is required. For the following reasons, it is recommended that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE.**

I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The petitioner, Alexander Adewale Oyenuga ("Oyenuga"), is a native citizen of Nigeria.[1] He entered the United States as a student on August 20, 1972, through Boston, Massachusetts. On July 2, 1975, his status was changed to permanent resident.

On July 8, 1997, Oyenuga was convicted of larceny upon his guilty plea in a Massachusetts state court. He was thereafter notified by the former Immigration and Naturalization Service ("INS") of its intent to have him removed to Nigeria. At a hearing held March 24, 1999, the immigration judge issued an order of removal. Oyenuga claims that, since the issuance of the removal order, he has collaterally challenged the Massachusetts conviction which would undermine the validity of the removal order.

Oyenuga was placed in the custody of DHS on October 28, 2003.[2] According to the declaration of Field Office Director Craig S. Robinson attached to defendant's response, on April 18, 2004, the government of Nigeria issued travel documents necessary to assist in the repatriation or removal of Oyenuga, which was first scheduled for April 19, 2004.[3]

---

[1] The factual information is obtained from the original petition which appears in this record as an attachment to Rec. Doc. No. 1.

[2] Rec. Doc. No. 14, p. 4.

[3] Rec. Doc. No. 15, Exh. A.

At that time, Oyenuga filed a motion to reopen his removal proceedings with the Board of Immigration Appeals ("BIA"). According to Robinson, on April 19, 2004, the matter was remanded to the immigration judge for further consideration. The motion to reopen automatically stayed the order of removal pursuant to 8 U.S.C. § 1003.23(b)(4)(ii). As a result, DHS officials could not repatriate Oyenuga as scheduled on the flight on April 19, 2004.

Robinson further attests that the motion to reopen was denied on May 20, 2004, which lifted the automatic stay of removal. However, after interviewing Oyenuga on December 28, 2004, Nigerian officials announced that they would not reissue travel papers until <u>after</u> Oyenuga exhausted his state court challenges to the underlying conviction. At that time, the Bureau of Immigration and Customs Enforcement ("BICE") could not locate any pending legal action brought by Oyenuga and could not remove Oyenuga without the necessary papers from the Nigerian government.

On March 2, 2005, during the pendency of this federal habeas corpus petition in the United States District Court for the District of Massachusetts, Nigerian officials agreed to issue travel papers which would allow repatriation of Oyenuga on April 12, 2005. However, on March 31, 2005, the court in Massachusetts issued a stay of removal, which was later modified to expire 14 days after transfer of the petition to this federal

3

court was completed.[4]  The petition was transferred to this court by order issued April 1, 2005 and received in this court on April 11, 2005.[5]

II.     FEDERAL HABEAS CORPUS PETITION

On January 27, 2005, Oyenuga filed a petition for issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the District of Massachusetts.  Oyenuga alleges that his continued detention while he awaits removal or repatriation to Nigeria is in violation of the Due Process Clause of the United States Constitution and the United States Supreme Court's rulings in Demore v. Kim, 538 U.S. 510 (2003), and Zadvydas v. Davis, 533 U.S. 678 (2001).

Oyenuga seeks federal relief based in part on his collateral challenge to the state court conviction which led to his immigration removability order.  He argues that this challenge will undermine the validity of the removal order.  As a result, he requests a stay of removal pending resolution of the collateral review proceedings.

Oyenuga also seeks habeas corpus relief, arguing that his detention is unreasonable in light of his status as a permanent resident alien entitled to release on bond under Demore and because the detention has exceeded a reasonable period of time after issuance of the final order of deportation under Zadvydas.  In his supplemental

---

[4]Rec. Doc. No. 1.

[5]Id.

4

brief, Oyenuga also suggests that immigration officials erred in refusing to grant him release on bond since he had established that he would not be a flight risk.[6] He also argues that the Government is unable to establish that the likelihood of his removal is imminent and therefore not in violation of the Constitution. For these reasons, Oyenuga also seeks summary judgment on the issue of the unreasonable length of his detention.[7]

The Government filed a response to Oyenuga's petition arguing that his detention has continued beyond the usual removal period as a result of Oyenuga's <u>own</u> actions in filing a motion to reopen his immigration appeal and his related motions for stay of deportation based on his challenges to the removal order and the underlying state criminal conviction. The Government asserts that Oyenuga has twice been scheduled on flights to Nigeria which were cancelled only as a result of his own filings with the BIA and the court in Massachusetts.

By order issued June 10, 2005, this court held that it is without jurisdiction to consider Oyenuga's challenge to the validity of the removal decision as it may be affected by his collateral challenge to the Massachusetts conviction.[8] Section 106 of the Real ID Act of 2005, 119 Stat. 231, PL 109-13 (HR 1268) (hereinafter "Real ID"),

---

[6] Rec. Doc. No. 5.

[7] Rec. Doc. No. 14.

[8] Rec. Doc. No. 12.

5

removed jurisdiction over review of a final administrative order of removal, deportation or exclusion in favor of the United States Circuit Courts of Appeals. Pursuant to Section 106, this court transferred the part of the case that challenges the order of removal, deportation, or exclusion to the United States First Circuit Court of Appeals. The court also transferred the related motions for stay (Rec. Doc. No. 7) and for preliminary injunction/stay (Rec. Doc. No. 11), since the bases of those motions are intertwined with the core challenges to the state conviction and the order of removal. For this reason, I recommend that Oyenuga's motion for preliminary injunction (Rec. Doc. No. 18) seeking enforcement of a stay of deportation be dismissed from the docket of this court without prejudice to his pursuit of the same relief in the United States First Circuit Court of Appeals.

Therefore, in light of the court's prior order, the only issue remaining for my recommendation in response to the court's referral order is whether Oyenuga's continued detention violates the Due Process Clause under the Supreme Court rulings in <u>Demore</u> and/or <u>Zadvydas</u>.

III.  <u>JURISDICTION AND VENUE ARE PROPER</u>

Title 28 U.S.C. § 2241 confers upon federal courts the authority to grant writs of habeas corpus "within their respective jurisdictions." Thus, personal jurisdiction is determined by the presence of the custodian within the territorial jurisdiction of the

Court.  Braden v. 30th Judicial Dist. Court, 410 U.S. 484, 495 (1973).  These same considerations are found in the general habeas provision, 28 U.S.C. § 2241(a), which provides in pertinent part:

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

The district of incarceration is therefore the only district that has jurisdiction to entertain a Section 2241 petition.  Rumsfeld v. Padilla, 124 S. Ct. 2711, 2722-23 (2004); Lee v. Wetzel, 244 F.3d 370, 373 (5th Cir. 2001); see Hooker v. Sivley, 187 F.3d 680, 682 (5th Cir. 1999) (a Section 2241 petition must be filed in the district of incarceration); United States v. Gabor, 905 F.2d 76, 78 (5th Cir. 1990) (to entertain a Section 2241 petition, the district court must have jurisdiction over the prisoner or his custodian at the time of filing).  This jurisdictional requirement is determined and satisfied at the time the petition is filed.  Lee, 244 F.3d at 370 n. 5 (citing St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1988) ("Jurisdictional facts must be judged as of the time the complaint is filed.")).

At the time of filing of this petition, Oyenuga was held in the Plaquemines Parish Detention Center in Braithwaite, Louisiana, which is within the territorial boundaries of the Eastern District of Louisiana.  This court had jurisdiction over Oyenuga's petition

and his custodian at the time of filing. His subsequent involuntary removal from the Eastern District did not affect this court's jurisdiction. Jabir v. Ashcroft, No. 03-2480, 2004 WL 60318, at *3 (E.D. La. Jan. 8, 2004) (Berrigan, J.) (citing Chavez-Rivas v. Olsen, 194 F. Supp. 2d 368, 369-70 (D.N.J. 2002) (Orlofsky, J.); Barton v. Ashcroft, 152 F. Supp. 2d 235, 238-39 (D. Conn. 2001) (Goettel, J.)). Accordingly, this court may properly address Oyenuga's petition. Oyenuga's Amended Motion for Change of Venue (Rec. Doc. No. 19) must be denied.

IV.   THE DEMORE HOLDING

In Demore v. Kim, 538 U.S. 510 (2003), relied upon by petitioner, the United States Supreme Court upheld the constitutionality of the mandatory detention provision found in 8 U.S.C. § 1226(c), which authorizes detention of aliens who have been convicted of certain crimes. The Court recognized the power of Congress to require that criminal aliens be detained "for the brief period necessary for their removal proceedings." Kim, 538 U.S. at 513. The Court deemed Section 1226(c) mandatory detention constitutionally permissible. Id. at 531.

The Court also recognized that Section 1226(c) "governs detention of deportable criminal aliens pending their removal proceedings." Id. at 527-28 (emphasis in original). This conclusion was reached in the Court's discussion of the distinctions between the issue it was considering in the Demore case (Section 1226(c) detention) and the

detention issues addressed in its earlier decision in Zadvydas. The Court resolved that detention under Section 1226(c) has a definite termination point; i.e., the time-sensitive conclusion of the removal proceedings by issuance of the order of removal. Id. at 529. Once the final order of removal is issued, however, court review is governed by Zadvydas regarding the length and reasonableness of the removal period detention. See id. at 527, 529; Longwa v. Bureau of Customs, No. 3:03CV497(JBA), 2004 WL 885084, at *4 (D. Conn. Apr. 23, 2004) (Arterton, J.) (once removal period begins, detention falls under Section 241 of the Immigration and Nationality Act [8 U.S.C. § 1231] and is reviewed under the dictates of Zadvydas).

In the instant case, Oyenuga's removal proceedings have concluded and a final order of removal has been issued. His current detention involves the removal period and post-removal period. For this reason, I find that the considerations set forth in Demore are irrelevant to Oyenuga's case. Although Oyenuga persists in his collateral challenges to the removal order and to his underlying criminal conviction, his removability is no less administratively final.

The removal proceedings are no longer pending and Section 1226(c) no longer governs his detention. Oyenuga is not entitled to habeas corpus relief based on his argument under Demore.

V.     THE ZADVYDAS HOLDING

Pursuant to 8 U.S.C. § 1231(a)(1) and (2), the United States Attorney General shall remove an alien within the "removal period," which the law generally defines to be 90 days from when an order of removal becomes administratively final, when any judicial review thereof is completed, or when the alien is released from any non-immigration confinement, whichever is latest, and shall detain the alien during the removal period.  In addition, an alien, if not removed during the removal period, shall, pending removal, be subject to supervision under regulations prescribed by the Attorney General.  8 U.S.C. § 1231(a)(3).  Furthermore, an alien who is removable under 8 U.S.C. § 1227(a)(2) may be detained beyond the removal period until his removal can be effected.  8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court determined that due process allowed for continued detention of a deportable alien beyond 90 days when there is a likelihood that the detainee will be deported within the reasonably foreseeable future.  Zadvydas, 533 U.S. at 699-700.  The Zadvydas opinion involved two different instances of detention, only one of which is relevant here.[9]

---

[9]The second detainee was Kim Ho Ma, a Cambodian national who was brought to the United States at the age of seven.  Id. at 685.  After serving two years of imprisonment for manslaughter, Ma was released into INS custody for removal to Cambodia, despite the lack of any repatriation treaty between Cambodia and the United States that would have provided for Ma's repatriation.  Id.  The United States Ninth Circuit Court of Appeals held that, given the absence of a repatriation agreement and the resulting unlikelihood of a successful deportation, the acceptable time for detention had expired

10

Zadvydas was a resident alien born of Lithuanian parents in a displaced persons camp in Germany in 1948. Id. at 684. Upon serving several years of imprisonment in the United States for various crimes, Zadvydas was ordered deported to Germany, which refused to accept him because he was not a German citizen. Zadvydas was also rejected by the Dominican Republic (his wife's home country), and by Lithuania because he lacked documentation of his parents' citizenship. Id.

Zadvydas was being held by the INS under a continued detention order. He sought his release through a federal petition for writ of habeas corpus on grounds that there was no country to which he could be deported. Judge Fallon of this district ordered Zadvydas released, finding that his continued detention, with no likelihood of deportation, violated due process. The Fifth Circuit reversed.

The Supreme Court granted certiorari and determined that due process allowed for an immigration detainee to be held beyond the 90-day removal period for as long as the government could establish that there was a likelihood of deportation within a reasonably foreseeable time. A habeas court is required to determine whether the detention in question exceeds a period reasonably necessary to secure removal. Id. at

---

after 90 days. The Supreme Court vacated the Ninth Circuit's decision and remanded with instructions for the Ninth Circuit to determine if deportation could be accomplished within a reasonably foreseeable time. On remand, the Ninth Circuit determined that it could not be accomplished and ordered Ma released pending deportation. Ma v. Ashcroft, 257 F.3d 1095 (9th Cir. 2001).

699. In doing so, it should measure reasonableness primarily in terms of the statute's basic purpose, i.e., to assure the alien's presence at the moment of removal. Id.

Thus, if removal is not reasonably foreseeable, the court should find a continued detention unreasonable and no longer authorized by statute. If removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period. Id. at 700.

The Supreme Court created a six-month presumptive period, allowing the government six months from finality of a deportation order to secure removal of the detainee, after which the government would bear the burden to establish the likelihood of removal within a reasonably foreseeable period. Thus, the Supreme Court determined that a six-month detention is a presumptively reasonable time period to detain a deportable alien beyond the administrative finality of the deportation order. Id. at 701. However, when that six-month period expires, the alien can show good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future. At that time, the burden shifts to the government to rebut this showing.[10]

---

[10]The Supreme Court also cautioned that the presumption of a six-month period of reasonableness does not mean that every alien not removed must be released after six months. To the contrary, the Court held that the alien may be held in confinement until such time as the INS or a federal court determines that there is no significant likelihood of removal in the reasonably foreseeable future. For detention to remain reasonable, "as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701. On

Oyenuga argues that his removal period detention has far exceeded the statutory 90-day period and the additional six month period allowed under Zadvydas. He further argues that because his order of removal is improper, he cannot and will not be removed within a reasonable period of time, and he therefore should be released while he challenges the removal order and the underlying state court conviction. The Government argues that the removal delays have accrued solely as a result of Oyenuga's continued challenges to his detention and the removal order. Consequently, his continued detention has been reasonable since he is the sole cause of the delay in his removal.

Oyenuga argues something quite distinct from the issue in Zadvydas. In Zadvydas, the petitioner awaited removal which could not be perfected by the Government within a reasonable time, in part because he had no country to which he could be repatriated. This is not the case with Oyenuga's removal, who can be repatriated to Nigeria.

A further distinction is Oyenuga's attempt to intertwine his merit challenge to the removal order with the length of his removal period detention. Zadvydas made no such challenge.

---

remand, the Fifth Circuit ordered Zadvydas released on probation because the government failed to prove a likelihood of deportation in the reasonably foreseeable future. Zadvydas v. Davis, 285 F.3d 398, 404 (5th Cir. 2002).

13

As discussed above, in light of Real ID, this district court is without jurisdiction to consider the merit challenge to the removal order. This court can only consider the reasonableness of the length of Oyenuga's current detention in light of the final order of removal, which has not been reversed in any way by a federal court. This leaves for this court the question of whether Oyenuga's detention since October 28, 2003 as a result of the issuance of the final order of deportation is reasonable in length, not in merit.

As explained above, 8 U.S.C. § 1231 provides that the statutory 90-day removal period begins <u>after the latest</u> of the administrative finality of the removal order, the completion of any judicial review, or when the alien is released from any non-immigration confinement. Neither the Government nor Oyenuga indicate when the order of removal issued March 24, 1999, became final.

Nevertheless, in evaluating the factors which trigger commencement of the 90-day period, it appears that by reason of Oyenuga's own actions the 90-day period may not yet have begun to run. Oyenuga relies extensively upon his continued efforts to challenge not only his final order of removal but the underlying state conviction. The merits of his challenge to the removal order are presently pending before the United States First Circuit Court of Appeals. Thus, judicial review is not complete.

Under Section 1231, the removal period does not begin to run until judicial review is complete. Oyenuga's judicial challenges to his removal therefore have either altered

14

or suspended the 90-day period that would normally be triggered by the issuance of the order of removal. In other words, it is Oyenuga's own challenges that prevent the Government from removing him while he pursues judicial relief from the final order of removal and, at the same time, apparently delay the start of the statutory 90-day removal period.

In Zadvydas, the Supreme Court required the federal courts to evaluate reasonableness by determining whether the time-line to deportation is shrinking in proportion to the passing period of incarceration. That is, "as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701. Of course, Zadvydas presumes that the alien has not thwarted the Government's efforts to shrink that period, as Oyenuga has done.

It has long been true that a "removal period shall be extended . . . if the alien . . . acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). As attested to by Field Office Director Robinson, each challenge filed by Oyenuga, the motion to reopen and the filing of this Section 2241 petition, brought with it a stay of removal. As a result, Oyenuga's two repatriation dates, April 19, 2004, and April 12, 2005, were aborted.

15

The detention period was also affected when Oyenuga discouraged the Nigerian government's issuance of travel documents for several months by asserting that he had filed for state post-conviction relief, which could not be located by BICE on the records of the state court. Similar behavior by an alien has previously been held to prevent relief in a post-Zadvydas challenge. See Duran v. Elwood, No. 01-2083, 2001 WL 902779, at *1 (E.D. Pa. Aug. 7, 2001) (Kelly, J.) (post-removal period detention found not to be excessive when petitioner frustrated the efforts of the INS to obtain travel documents by advising his consulate that he did not wish to return to his native country of El Salvador).

Oyenuga's continued challenges to the merits of his final order of removal have resulted in the extension of his current detention. Under the statutory scheme discussed herein, the removal period is suspended until Oyenuga's judicial review is complete.

The Government has twice obtained the documentation necessary to repatriate Oyenuga to Nigeria and has twice had flights scheduled, only to be thwarted by Oyenuga's challenges. The Nigerian government is apparently willing to provide the necessary travel documents. Nothing in the record suggests that Oyenuga would not be repatriated to Nigeria in the absence of his own continued legal maneuverings. The record therefore reflects that, upon completion of judicial review, it is very likely that Oyenuga will be removed within a reasonably foreseeable time.

For the foregoing reasons, Oyenuga's federal habeas corpus petition must be denied because he is not entitled to relief under Zadvydas. For the same reasons, his motion for summary judgment is also without merit and must be denied.

### RECOMMENDATION

It is therefore **RECOMMENDED** that Oyenuga's Amended Motion for Change of Venue (Rec. Doc. No. 19) and the Motion for Summary Judgment (Rec. Doc. No. 14) be **DENIED**.

It is further **RECOMMENDED** that Oyenuga's Motion for Preliminary Injunction (Rec. Doc. No. 18) be **DISMISSED WITHOUT PREJUDICE** to his pursuit of similar relief in the United States First Circuit Court of Appeals.

It is further **RECOMMENDED** that Oyenuga's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2241 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___22___ day of August, 2005.

```
                               _____
                                    JOSEPH C. WILKINSON, JR.
                               UNITED STATES MAGISTRATE JUDGE
```